DECISION
Plaintiff appeals Defendant's determination of real market value for property identified as Account 00258517 for tax years 2007-08 and 2008-09. A trial was held September 29, 2009, in the Oregon Tax Courtroom, Salem, Oregon. W. Scott Phinney, Attorney at Law, appeared on behalf of Plaintiff. Plaintiff testified. Kathleen J. Rastetter, Senior Clackamas County Counsel, appeared on behalf of Defendant. Lynn Longfellow (Longfellow), Sales Data Analyst for Clackamas County Assessment and Taxation, testified on behalf of both parties. Geoff Bennett (Bennett), Appraiser, testified on behalf of Defendant.
 I. STATEMENT OF FACTS
The parties stipulated to the subject property's real market value for tax year 2005-06. Plaintiff alleges that Defendant erroneously trended the subject property's real market value for tax years 2007-08 and 2008-09. Plaintiff concludes that the subject property's real market value for tax years 2007-08 and 2008-09 is the 2006-07 real market value of $2,515,257. Defendant concludes that the subject property's real market value for tax years 2007-08 and 2008-09 is $2,844,659 and $2,844,409, respectively.
The subject property has lake front access to Lake Oswego located in the city of Lake Oswego and the house, built in 1991, is 9,800 square feet. Plaintiff testified that he purchased *Page 2 
the subject property in 2005, paying $2,200,000. He testified that there have been no improvements to the property since the "stip for 2005-06." In response to Defendant's question, Plaintiff acknowledged that the subject property had been "for sale for six years" before he bought it and he purchased it because "he had to move." Bennett testified that Plaintiff told him that the subject property's land alone is worth "$2 million."
In support of the tax roll real market values, Bennett, a registered appraiser with five years experience appraising primarily residential properties in Clackamas County, testified that he prepared two appraisal reports, each concluding that the subject property's real market value on the tax roll value is less than an indicated value using a market approach or cost approach. (Def's Exs A; B.) For the properties Bennett identified as comparable to the subject property, the unadjusted sale prices ranged from $2,084,000 to $5,250,000 with sale dates ranging from June 2006 to March 2008.[1] (Def's Ex A at 2; B at 2.) Each property has access to Lake Oswego and each house was custom built, varying in size from approximately 4,200 to 8,500 square feet of living space. (Id.) The parties agree that the subject property is located in a non-homogenous neighborhood because the homes were custom built, substantially varying in size, age and amenities.
Bennett concluded that from "January 1, 2006 to January 1, 2007 overall values for properties on Lake Oswego increased by 7%," and he adjusted the sale prices with one exception that he admitted was an error. (Def's Ex. A at 4.) Bennett adjusted the sale prices for size, using the "Oregon State Cost Factor book and adjusted for time." (Id.) He testified that the adjustment (price per square foot) was the "same for all classes of property even if the property was in a *Page 3 
different class." "Adjustments for class were made at $100,000 per half class. This adjustment was derived from the Oregon Cost Factor Book and adjusted for time."[2] (Id.) The parties agree that the subject property is a "class 7-." Bennett concluded that "[n]o other adjustments are required to capture differences in design between the comparable sales and the subject." (Id.) Bennett made no adjustment for age even though the year built for the comparable properties ranged from 1937 to 1998 with the earlier built homes being remodeled in the late 1980s. (Def's Exs A at 2; B at 2.)
Bennett concluded that "[f]rom January 1, 2007 to January 1, 2008 overall values for properties on Lake Oswego stayed constant." (Def's Ex B at 4.)
Bennett testified that he did not inspect any of the comparable properties; he had inspected the subject property on July 23, 2009. Bennett testified that he "drove by" the properties he selected as comparables and reviewed aerial photos of the comparable properties and property descriptions found in "real estate multiple listings."
Because there were "[n]o bare land sales * * * on the [land] since 2002 and * * * no vacant buildable lots that remain on the lake," Bennett adjusted the land values "using the Assessor's Land [real market value]." (Def's Exs A at 5; B at 5.) He testified that "in the `90s" the county "did a full appraisal of lake land values." Bennett testified that the "90s land values have been trended forward."
Using the market approach that he concluded was the "best indicator of value," Bennett concluded that the subject property's indicated real market value was $3,300,000 as of January 1, 2007, and $3,400,000 as of January 1, 2008. (Def's Exs A at 9; B at 9.) *Page 4 
Bennett testified that "[t]he cost approach was derived from the Oregon State Cost Factor Book [and the] [p]rice per square foot for all improvements [was] adjusted for time." (Def's Exs A at 6; B at 6.) He testified that "[t]he Cost Approach indicates that the total value of the subject property to be $2,844,659" for tax years 2007-08 and 2008-09. (Def's Exs A at 9; B at 9.) Bennett concluded that the cost approach "shows strong support for the values derived from the Market Approach." (Id.) Bennett also concluded that the income approach "was not considered as residential homes on Lake Oswego are not used as income producing properties." (Id.)
Longfellow, a Clackamas County Assessment and Taxation sales data analyst for the last four years, testified that, following the Oregon Department of Revenue's "ratio procedures manual" and using "confirmed" and "valid" sales transaction for the calendar year, the county prepares an annual "ratio study" with "the purpose to bring" tax roll values to "100 percent of real market value as of January 1." She concluded that the "sales ratio study" is "appropriate for mass appraisal" and is not "used for the comparable sales approach." Longfellow reviewed, in detail, a portion of the 2007 Ratio Study [for] Clackamas County, submitted to the Oregon Department of Revenue on June 13, 2007. (Def's Ex D.) Longfellow testified that, using 18 sales of property identified within the subject property's "market area 14371 and 14374"[3] that were closed during 2006, she concluded that the sample was "statistically sound." She testified that, based on the ratio study's outcome, the subject property's 2006-07 real market value was increased 8 percent. That was computed by dividing .93 which was the computed "mean and median" into 1.00 and "rounding" the result (.7527) "up" to "8 percent." (Id.) Plaintiff concluded that Defendant's practice of "rounding up" is "unconstitutional" and violates the *Page 5 
"court's holding in Dennehy." Longfellow testified that the difference in Defendant's real market value for the subject property between tax year 2007-08 and 2008-09 is a "depreciation adjustment" ($250) applied to the subject property.
In response to Plaintiff's questions, Longfellow stated that comparable sales 2 and 3 included in Bennett's appraisal report were not used in the ratio study and there were no class 7 or 8 properties included in the 18 sales reviewed for the tax year 2007-08 ratio study. She testified that, among the 18 sales listed, only one house was built in 1984 with the other 17 houses built between 1920 and 1969, and she had no knowledge if any of the houses were "redeveloped or remodeled." Longfellow did not know if the "certified real market values" needed to be "adjusted" for properties that had been "redeveloped or remodeled." Plaintiff noted that, among the class 5 and 6 sale properties listed in the ratio study, "some values went up and some values went down" and there are "no sales" to support the "upward adjustment" proposed by Defendant for the subject property which is a class 7-.
Prior to undertaking the ratio study, Longfellow testified that the "real market values of all residential properties" are "recalculated every year" to account for "improvement depreciation," and other studies such as land studies or local cost modifier studies. According to Longfellow, the 2006-07 land real market values of all residential properties were increased "a conservative" 10 percent. (Def's Ex C at 1.) Longfellow testified that she had "no knowledge of the land sales" used in the land study nor did she know the "statutory authority" authorizing "the land study." She testified that, if the land values had not been increased 10 percent, the ratio study trend factor "would have been more than eight percent." At trial, Plaintiff asserted that the land study "which was not part of the sales ratio study" cannot "be applied to adjudicated values" because it does not "fit" within the statutory authority of "ORS 309.115(2)(a) or (b)." *Page 6 
 II. ANALYSIS
The parties stipulate that the subject property's real market value was determined by the court through the parties' stipulation for the 2005-06 tax year. ORS 309.115(1)[4] provides, in relevant part, that if the court determines the real market value of a property, "the value so entered shall be the real market value entered on the assessment and tax rolls for the five assessment years next following the year for which the order is entered." A taxpayer is permitted to claim the benefit of a prior adjudicated value for up to five years with certain exceptions. ORS309.115(4) provides that:
 "If, during the five-year period described in subsection (1) of this section, another order correcting the real market value of the property subject to subsection (1) of this section is entered, subsection (1) of this section shall apply for the five years next following the year the later order is entered."
In analyzing ORS 309.115(4), the court concluded that this statutory provision offers a taxpayer an option to appeal a value determined by the court. If the taxpayer challenges the value and prevails, "[t]he final order which issues as a result of that appeal will be the new ORS 309.115
value to be entered on the roll." Pacificorp v. Dept. of Rev., 11 OTR 463,465 (1990). The court went on further to state that "ORS 309.115 does not bar a taxpayer from appealing on the ground that the tax administrator incorrectly applied the statute. * * * However, the statute does not contemplate allowing a taxpayer to appeal the true cash value of the property and at the same time claim the benefit of ORS 309.115." (Id. at 466 (emphasis added).)
In the matter before the court, Plaintiff chose not to "step outside the protection of [ORS 309.115] and appeal the real market value of the property anew." Gettman v. Dept. of Rev., TC No 3388, WL 300719 *1 (August 5, 1993.) But rather, Plaintiff challenges Defendant's failure to follow the applicable statute, ORS 309.115. Plaintiff alleges that *Page 7 
Defendant's determination of real market value for tax years 2007-08 and 2008-09 is outside the statutory authority of ORS 309.115(2), which states in pertinent part:
 "Notwithstanding subsection (1) of this section, the following adjustments may be made to the real market value during the period described in subsection (1) of this section:
 "(a) Annual trending or indexing applied to all properties of the same property class in the county, or within clearly defined areas of the county under this chapter.
 "(b) Annual trending or depreciation factors applied to similar property."
Plaintiff challenges Defendant's use of its annual ratio study to establish a trend factor of eight percent. Defendant increased the 2006-07 real market tax roll value by the eight percent factor to determine the 2007-08 real market value. This court previously held that an adjudicated value may be increased or decreased using trends determined by ratio studies. Neimeyer v. Dept of Rev. (Neimeyer), 14 OTR 34
(1996). A taxpayer may challenge the ratio study and, after considering the evidence submitted in support of the challenge, the court can accept the county's trend factor or determine its own trend factor. (Id. at 38 — 39.)
A. Ratio Study Challenges
1. Exclusion of Sales
Plaintiff's first challenge to Defendant's use of its ratio study focuses on Longfellow's exclusion of two reported sales. The Oregon Department of Revenue Assessor's Certified Ratio Study Procedures Manual 2007 (Manual) states that "[a]ll available sales should be used for each property class to provide an accurate reflection of the assessment program." (Def's Ex E at 14.) After having accumulated "all available sales," those sales are divided between "usable" and "unusable." (Id. at 20.) In the category of unusable sales, "[s]ales that are not open-market transactions [or] [u]nconfirmed sales that appear to be other than arm's length transactions" are deleted from the ratio study. (Id.) The Manual states that "[s]ales deemed unusable for ratio *Page 8 
analysis may be useful in appraisal area set-up studies." (Id.) Longfellow's testimony reciting her reasons for excluding comparable sales 2 and 3 that appeared in Bennett's appraisal report fit within the Manual guidelines.
2. Lack of Class 7 or 8 Properties
Plaintiffs second challenge focuses on the lack of class 7 or 8 properties among the 18 sales. A discussion of this challenge will be aided by some background information about the ratio study. According to the Manual, the ratio study measures the ever changing property real market values. (Def s Ex E at 6.) "The purpose of this ratio study is to [m]easure the real market value level from year to year." (Def s Ex E at 61.) Data for the ratio study is accumulated by market area delineation. "OAR 150-309.200(A) defines market area as a group of properties that generally share important characteristics that influence value." (Def s Ex E at 12.) According to Longfellow, the shared important characteristic of the properties for the ratio study before the court is access to Lake Oswego.
"A ratio study is a form of applied statistics, because the analyst draws conclusions about the appraisal of the population (the entire jurisdiction) of properties based only on those that have sold during a given time period." (Def s Ex F at 8.) The ratio study is not a replacement for an appraisal of a property which is the best evidence of the real market value of a particular property. Plaintiff did not appeal the real market value of the subject property (ORS 308.205). Plaintiff appealed the adjudicated value (ORS 309.115). For the purpose of determining a trend to be applied to an adjudicated value, this court has previously concluded that a trend factor can be developed and applied based on an annual ratio study. Neimeyer, 14 OTR at 35. There is no *Page 9 
evidence that the subject property did not share the "important characteristics that influence value" of those properties that were "sold during a given time period" and incorporated into Defendant's ratio study. (Def's Ex F at 8, 12.)
3. Ratio Study Data
Plaintiff's third challenge includes a critique of the data used in the ratio study. Plaintiff queried Longfellow as to whether any of the properties in the ratio study had been "redeveloped" or "remodeled." The Manual states that if "[a] property had been remodeled since the last revaluation without the records being adjusted to reflect the change[,] [y]ou can adjust the percent good, square footage/area, etc, to reflect the [real market value] that would have been used at the time of the last revaluation, trended forward." (Def's Ex E at 20.) In addition, Plaintiff asked if the real market values were certified. The Manual states that "[f]or this [ratio] study, * * * [it] is the relationship between current certified roll real market values and the real market values required for the pending roll." (Def's Ex E at 61.) Plaintiff questioned, but did not present any evidence to show that Defendant's ratio study used unadjusted data for remodeled properties or failed to use "current certified roll real market values." (Id.)
"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon theparty seeking affirmative relief." ORS 305.427 (emphasis added). Plaintiff must establish his claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." Schaefer v. Dept. of Rev., TC No 4530 at 4 (July 12, 2001) (citing Feves v. Dept. of Rev., 4 OTR 302
(1971)). This court has stated that "it is not enough for a taxpayer to criticize a county's position." Poddar v. Dept. of Rev., 18 OTR 324, 332
(2005) (quoting Woods v. Dept. of Rev., 16 OTR 56, 59 (2002) (citation *Page 10 
omitted)). Plaintiff's approach was to ask questions and raise "potential" concerns, but not to provide evidence. Plaintiff's approach was to suggest that Defendant's ratio study was flawed because the data failed to follow the procedures outlined in Defendant's Manual. Unfortunately, "[s]uch negative testimony [or innuendo] does not establish an affirmative case." Erickson v. Commission, 1 OTR 626, 629
(1964).
4. Rounding
Plaintiff's fourth challenge is to Defendant's "rounding up" of the trend factor based on the computed ratio. A ratio is defined as "[a] comparison of the real market value on the certified roll, to the sale price or adjusted sale price expressed as a percentage. This expresses the real market value level as of the date of sale or as of the January 1 assessment date, if the sale prices were adjusted for time to January 1 for the current year." (Def's Ex E at 64 (emphasis omitted).) In deciding on an acceptable ratio, "[t]he goal is to select one of the central tendency indicators (mean, median, weighted mean, geometric means, or mode) that best represents the RMV level for the area you are measuring. The selected central tendency is strengthened by utilizing the support of another measure of central tendency." (Def's Ex E at 46.)
After reviewing the "central tendency indicators," Defendant concluded that the ratio was 0.93 percent. (Id.; Def's Ex D at 36.) The evidence supports Defendant's conclusion. Both the mean and median were 0.93 percent and the weighted mean was 0.94 percent. (Id.) The price related differential was 0.99, which indicates that the "degree of bias or vertical value equity is not considered significant." (Def's Ex E at 44.) "For single-family residences, coefficients should generally be 15 or less" and Defendant's ratio study computed a coefficient of dispersion of 0.12 percent. (Def's Ex D at 36; Def's Ex E at 40.) *Page 11 
Next, Defendant "converted [the 0.93 percent] into an adjustment by dividing [0.93] percent into 100 percent," which equals 1.075269 percent. (Def s Ex E at 26.) Then, Defendant "rounded up" the computed annual percent (7.5269) to eight percent. Defendant's final step was to take the 2006-07 real market value adjusted for the 10 percent trend increase in land value and increase that value by eight percent to arrive at a real market value of $2,844,659.
The witnesses' testimony did not adequately address the "rounding" issue. The court finds no statutory authority or standard procedure that discusses "rounding" other than a reference to "ease of computation" in Defendant's Manual that suggests that a whole percent is easier to use. (Id.) "Ease of computation" should not be the sole defining characteristic when setting a trend factor to be applied to an adjudicated value. The purpose for which the trend factor is developed should be among the defining characteristics considered. Defendant's evidence, Standard on Ratio Studies (approved by the International Association of Assessing Officers in July, 2007), includes examples of ratios computed to three decimal places. (Def s Ex F at 12; 51, 53.) The Appraisal Institute's The Appraisal of Real Estate, 13th Edition, contains numerous examples of rates computed to four or more decimal places.
Lacking a statutory directive to round a computed ratio to a whole percent and considering among other defining characteristics the purpose of the trend factor, the court concludes that the real market value of the subject property for tax year 2007-08 is $2,835,917.
B. Land Study Challenge
Plaintiff challenges the 10 percent trend adjustment Defendant made to the land real market values of all residential property located in the county. Plaintiffs approach was similar *Page 12 
to his challenge of the data used in the ratio study; Plaintiff's approach was to ask questions and raise "potential" concerns, but not provide evidence. Plaintiff failed to meet his burden of proof.
C. Statutory and Constitutional Challenges
With respect to both the ratio study and land study, Plaintiff raised a statutory challenge, alleging that the county can only make one adjustment to a property value, and a constitutional challenge, alleging that Defendant's action was in violation of the Oregon Supreme Court's holding in Dennehy v. Dept. of Rev. (Dennehy I), 305 Or 595, 756 P2d 13
(1988) and Dennehy v. Dept. of Rev. (Dennehy II), 308 OR 423, 425,781 P2d 346. This court is not persuaded by either challenge.
ORS 309.115(2) allows an annual "trending or indexing [to be] applied to all properties of the same property class in the county" and second, it permits an "[a]nnual trending * * * factor [to be] applied to similar property." ORS 309.115(2)(a), (b). In the case before the court, the land study trending factor was applied "to all properties of the same property class in the county" and the ratio study trend factor was "applied to similar property." (Id.) Plaintiff's challenge fails.
In Dennehy II, the Oregon Supreme Court held that the practice of "rounding up" property tax levy rates to the nearest whole cent when converting the levy into a rate of levy was unconstitutional "as violating the limitation of Oregon Constitution, Article XI, section 11."Dennehy II, 308 Or at 425. The court held that "[t]he constitution, however, forecloses any law that will raise (arithmetically, not empirically) more revenues for a taxing unit than its tax base." (DennehyI, 305 Or at 609.) Plaintiff argues that the court's holding is applicable to the trend factor computation and Defendant is prohibited from "rounding up" the trend factor. Plaintiff reasons that, because the trend factor determines real market value and Plaintiff's assessed value *Page 13 
for the tax years before the court is real market value, Plaintiff's assessment violates the Oregon constitution.
In 1988, Article XI, section 11(1) of the Oregon Constitution provided:
 "Except as provided in subsection (3) of this section no taxing unit, whether it be the state, any county, municipality, district or other body to which the power to levy a tax has been delegated, shall in any year so exercise that power to raise a greater amount of revenue than its tax base as defined in subsection (2) of this section. The portion of any tax levied in excess of any limitation imposed by this section shall be void.[5]"
Article XI, section 11(1) imposed limits "on the amounts that the taxing units may levy without prior approval of the voters."[6] Dennehy I,305 Or at 599. A levy rate is applied to a value to compute a property tax assessment; a levy rate and a property's real market value are separately computed. Plaintiff's attempt to extend the constitutional levy limitation to a trend factor is a misapplication of the law. There is no constitutional limit on real market value. The court finds no constitutional prohibition on Defendant's practice of rounding up a trend factor.
 III. CONCLUSION
After careful review of the evidence and testimony, the court concludes that Defendant's use of a ratio study to trend the adjudicated value of the subject property is acceptable. The court concludes that the subject property's tax year 2007-08 real market value is $2,835,917. The parties agree that the only change in real market value between tax year 2007-08 and 2008-09 is depreciation in the amount of $250. Now, therefore, *Page 14 
IT IS THE DECISION OF THIS COURT that the tax year 2007-08 real market value of the subject property is $2,835,917; and
IT IS FURTHER DECIDED that the tax year 2008-09 real market value is the 2007-08 real market value ($2,835,917) reduced for depreciation in the amount of $250.
Dated this ___ day of December 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanner onDecember 18, 2009. The Court filed and entered this document on December18, 2009.
[1] Bennett withdrew comparable 2 for 2007 because he concluded it was not an arm's length sale transaction. (Def's Ex A at 2.)
[2] Bennett testified that the class adjustment for comparable 3 was understated.
[3] Longfellow testified that the 18 "properties that were sold are tied together" by their "access to Lake Oswego."
[4] References to the Oregon Revised Statutes (ORS) are to year 2005.
[5] Article XI, Section 11 was changed in May 1997.
[6] See Article CI, Section 11(a)(A), defining real market value. *Page 1